UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| **KATHERINE RAMEAU,** )<br>     **Plaintiff** )<br>  )<br>v.   )<br>  )<br>**STATE OF MAINE DEPARTMENT OF** )<br>**CORRECTIONS;** )<br>**SCOTT LANDRY** individually and in his former )<br>capacity as Warden of Maine Correctional Center; )<br>**RANDALL LIBERTY** individually and in his )<br>capacity as Commissioner of )<br>Maine Department of Corrections; )<br>**DEBORAH MARSHALL** individually and as )<br>an employee of Maine Department of Corrections; )<br>**AMANDA GALLANT** individually and as )<br>an employee of Maine Department of Corrections; )<br>**OFFICER DUMONT** individually and as )<br>an employee of Maine Department of Corrections; )<br>**JOHN DOE 1** individually and as )<br>an employee of Maine Department of Corrections; )<br>**JOHN DOE 2** individually and as )<br>an employee of Maine Department of Corrections; )<br>**JOHN DOE 3** individually and as )<br>an employee of Maine Department of Corrections; )<br>**JANE DOE 1** individually and as )<br>an employee of Maine Department of Corrections; )<br>**JANE DOE 2** individually and as )<br>an employee of Maine Department of Corrections; )<br>**JANE DOE 3** individually and as )<br>an employee of Maine Department of Corrections, )<br>     **Defendants** ) | DOCKET No. |

**COMPLANT**
**& REQUEST FOR JURY TRIAL**

NOW COMES Plaintiff Katherine Rameau and complains against Defendants State of Maine Department of Corrections *et al.* as follows:

## Parties

1. Plaintiff Katherine Rameau is an individual residing in Casco, Cumberland County, Maine.

2. Defendant State of Maine Department of Corrections is a Department of the State of Maine, charged with responsibility for the care and housing of individuals incarcerated by the State of Maine, and is located in Augusta, Kennebec County, Maine.

3. Defendant Scott Landry was the Warden of Maine Correctional Center in Windham at all times relevant to this suit, and on information and belief is an individual residing in Maine.

4. Defendant Randall Liberty is the Commissioner of Maine Department of Corrections, and on information and belief is an individual residing in Maine.

5. Defendant Gallant was employed by the Maine Department of Corrections at all times relevant to this suit, and on information and belief is an individual residing in Maine.

6. Defendant Marshall was employed by the Maine Department of Corrections at all times relevant to this suit, and on information and belief is an individual residing in Maine.

7. Defendant Dumont was employed by the Maine Department of Corrections at all times relevant to this suit, and on information and belief is an individual residing in Maine.

8. Defendants John Doe 1-3 were employed by the Maine Department of Corrections at all times relevant to this suit, and on information and belief are individuals residing in Maine.

9. Defendants Jane Doe 1-3 were employed by the Maine Department of Corrections at all times relevant to this suit, and on information and belief are individuals residing in Maine.

10. Each of the individual defendants were at all times acting in their own individual capacities and as agents or employees of the Maine Department of Corrections.

**Jurisdiction & Venue**

11. This action arises under 42 United States Code (U.S.C.) §§ 1983 and 1988; the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution; Article 1 §§ 1, 6, 6-A and 9 of the Maine Constitution; and 5 M.R.S. § 4682 (the Maine Civil Rights Act).

12. This Court has original jurisdiction of Plaintiff's Complaint pursuant to 28 U.S.C. §§ 1331 and 1343.

13. This Court may exercise supplemental jurisdiction over Plaintiff's State Law claims arising from a common nucleus of operative fact pursuant to 28 U.S.C. § 1367.

14. Venue is proper in this Court because all of the events giving rise to Plaintiff's claims occurred in Portland, Cumberland County, Maine.

**Jury Demand**

15. Plaintiff demands trial by jury.

**Facts**

16. Plaintiff was incarcerated at Maine Correctional Center (MCC) in February 2019.

17. Plaintiff was pregnant at the time of her incarceration.

18. On February 13, 2019, when she was 38 weeks pregnant, Plaintiff attended a scheduled hospital appointment at Maine Medical Center in Portland for a pregnancy check-up.

19. Plaintiff was transported to the hospital appointment and accompanied at all times by two correctional officers.

20. At the appointment, medical personnel informed Plaintiff that they were going to induce her labor at the request of Maine Correctional Center staff.

21. Medical staff induced Plaintiff's labor.

22. Plaintiff remained at the hospital after being induced until her child was born in the early morning of February 14, 2019.

23. Plaintiff's water broke and her contractions began at about 1:00 p.m. on February 13, 2019.

24. Plaintiff was in labor for approximately 12-15 hours before her baby was born.

25. Correctional officers remained in the hospital room with Plaintiff throughout her labor and delivery.

26. Defendants Marshall, Gallant, Dumont, John Does 1-3, and Jane Does 1-3 were present in Plaintiff's room at various times during her labor and delivery.

27. While in her room, corrections officers remained within a few feet of Plaintiff.

28. The presence of the officers in the room was *not* at the request of medical staff and Plaintiff did not a security or escape risk while she was in labor and childbirth.

29. If necessary, corrections officers could have supervised Plaintiff by sitting outside of her room.

30. At times during her labor, Plaintiff was wearing only a sports bra.

31. Plaintiff spent some of her labor in a water tub, at which time she was entirely naked.

32. While Plaintiff was naked in the tub, one male and one female corrections officer were in the room.

33. During her labor, Plaintiff's legs were frequently open and lifted up.

34. While she was delivering her baby, a female officer held Plaintiff's leg without Plaintiff's permission or consent.

35. Plaintiff repeatedly asked corrections officers to leave her hospital room to afford her

privacy, but corrections officers ignored her request and instead made jokes and laughed at her.

36. Plaintiff objected to the presence of female officers and male officers and was no less harmed by the presence of female strangers observing her in labor and delivery in violation of state law and her constitutional rights than she was by the presence of male strangers doing the same things.

37. Medical staff questioned whether officers should be in the room.

38. When questioned by medical staff and when Plaintiff requested privacy, officers also claimed they were required to be within three feet of Plaintiff at all times.

39. While delivering her baby, Plaintiff asked a male corrections officer to move to a place where he could not see her genitals.

40. The male officer then moved from the foot of Plaintiff's bed to a new position three feet away from Plaintiff, where he could still see, hear, and smell everything that was happening in the room and had a direct view of Plaintiff's genitals.

41. While Plaintiff was in labor, officers discussed shackling her to the bed but medical staff informed the guards that Plaintiff was in active labor and told them not to do so.

42. During and after the birth, corrections officers made jokes at the expense of Plaintiff and her baby, for example joking that they hoped to be retired by the time Plaintiff's baby grew up and inevitably also ended up in prison.

43. All Defendants present in Plaintiff's room were able to see, hear, and smell everything that was happening in the room while Plaintiff labored and delivered her baby, including, but not limited to, seeing the naked and/or exposed bodies of Plaintiff and her newborn child, seeing Plaintiff's genitals when exposed during cervical exams and the delivery of her baby, hearing medical personnel's discussions about Plaintiff's condition, and observing Plaintiff's bodily fluids.

44. Defendants' presence in Plaintiff's hospital room while she was exposed during labor and delivery constituted a very long and very intimate search in violation of Plaintiff's constitutional right to privacy.

45. Defendants had no legitimate penological interest in remaining in Plaintiff's hospital room.

46. The presence of corrections officers in the labor and delivery room without the request of medical staff was a violation of 30-A M.R.S. § 1582(4), which states that when pregnant inmates are "admitted to a medical facility or birthing center for labor or childbirth, a corrections officer may not be present in the room during labor or childbirth unless specifically requested by medical personnel."

47. Not only did medical staff *not* request officers' presence in Plaintiff room, they actively requested that officers leave Plaintiff's room.

48. Male corrections officers remained present in Plaintiff's room, even when female officers were also present, which violated § 1582(4) even if medical staff had requested an officer remain in the room.

49. Shackling Plaintiff to the bed while she was in labor, as corrections officers planned to do, would have been a violation of 30-A M.R.S. § 1582(1) and (2)(B) had Defendants in fact shackled Plaintiff as they wished.

50. After Plaintiff's baby was born, the baby was taken home by baby's father.

51. After giving birth, Plaintiff was returned to Maine Correctional Center.

52. When Plaintiff was back at MCC, her clothes were returned to her, but she was left for approximately four hours without pads or similar products with which to manage her post-partum bleeding.

53. In the approximately two hours following her childbirth, Plaintiff underwent three strip searches: one in the hospital room before leaving, one in intake upon arriving at MCC, and one in a solitary confinement cell at MCC.

54. A female officer conducted the strip searches.

55. The strip searches were conducted although Plaintiff had been in officers' sight the entire time that she had been laboring and delivering her baby in hospital.

56. Defendant Liberty is the commissioner of Maine Department of Corrections (MDOC), is the chief policy maker for MDOC, and is responsible for training and supervision of Defendants Marshall, Gallant, Dumont, and other unidentified correctional officers.

57. Defendant Liberty failed in his duty to train or supervise the Defendants as they were acting in their capacity as correctional officers, leading to the violations of rights Plaintiff complains of herein.

58. Defendant Landry was the Warden of Maine Correctional Center at the time of the events giving rise to this suit, and was a chief policy maker for the MCC and was responsible for training and supervision of Defendants Marshall, Gallant, Dumont, and other unidentified officers.

59. Defendant Landry failed in his duty to train or supervise the Defendants as they were acting in their capacity as correctional officers, leading to the violations of rights Plaintiff complains of herein.

60. On information and belief, MDOC and/or MCC policy required correctional officers to violate the constitutional rights of Plaintiff, and to violate State law, by requiring them to remain within three feet of Plaintiff while she was in labor and delivering her baby.

61. On information and belief, MDOC and/or MCC has a pattern and practice of failing to adequately train and supervise officers as they are constitutionally required to do.

62. As a result of the actions of Defendants, Plaintiff has suffered injuries including, but not limited to, violations of her constitutionally protected civil rights, embarrassment, degradation, post-traumatic stress, and anxiety.

## COUNT I:
### Violation of 42 U.S.C. § 1983
### Defendants Marshall, Gallant, Dumont, John Does 1-3, and Jane Does 1-3

63. Plaintiff repeats and realleges all foregoing paragraphs as though reproduced here in full.

64. Defendants unreasonably and/or intentionally committed acts and/or omissions while acting under color of state law that violated Plaintiff's clearly established rights to privacy, to due process, to bodily integrity, to be free of cruel and unusual punishment, to be free from perpetration of constitutional violations by corrections officers, and her right to an action to pursue a claim for the deprivation of these rights as enumerated by the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution and Plaintiff's analogous rights under the Maine Constitution.

65. A reasonable person would have known that the acts and/or omissions committed by Defendants violated Plaintiff's rights as guaranteed by the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution and Plaintiff's analogous rights under the Maine Constitution.

66. The unlawfulness of Defendants' acts and/or omissions was apparent at the time they were committed in light of pre-existing law.

67. Defendants' acts and/or omissions showed a deliberate, malicious, reckless, or callous disregard of or indifference to the rights of Plaintiff.

68. Defendants were aware of the risks to Plaintiff's privacy, constitutional rights, and personal safety.

69. Defendants disregarded the risks to Plaintiff's privacy, constitutional rights, and personal safety.

70. Defendants failed to take reasonable measures to protect Plaintiff's privacy, constitutional rights, and personal safety.

71. Plaintiff suffered harm as a result of Defendants' actions.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court grant judgment in favor of Plaintiff and against Defendants and award Plaintiff the following relief:

a) An amount of damages deemed reasonable by the trier of fact sufficient to compensate Plaintiff;

b) Punitive damages in an amount sufficient to punish and deter Defendants from engaging in this form of malicious conduct in the future;

c) An award of pre-judgment interest from the earliest date allowable by law at the highest rate allowable by law;

d) Costs and attorneys' fees to the extent allowable by law. 42 U.S.C. § 1988; and

e) Any other relief as the Court deems proper and just.

**COUNT II:**
**Violation of 42 U.S.C. § 1983**
**Defendants MDOC, Liberty, and Landry**

72. Plaintiff repeats and realleges all foregoing paragraphs as though reproduced here in full.

73. Defendants Landry and Liberty were at all times mentioned herein responsible for the recruitment, training, supervision, and discipline of all other Defendants.

74. The constitutional and statutory violations of Plaintiff's rights committed by all other Defendants were caused by the acts and/or omissions of Defendants, including, but not limited to, their grossly negligent policies, customs and/or pattern of practice in recruitment, training, supervision, and discipline of all other Defendants.

75. The policies, customs, and practices of the Maine Department of Corrections and its policy makers are the cause of the constitutional violations at issue in this complaint.

76. At all relevant times Defendants Landry and Liberty were the policy makers within the Maine Department of Corrections/Maine Correctional Center hierarchy.

77. At all relevant times, Defendants Landry, Liberty, and the Maine Department of Corrections engaged or acquiesced in customs, policies, or practices that violated the clearly established constitutional rights of Defendants.

78. Defendant Maine Department of Corrections' policies and customs caused the deprivation of Plaintiff's clearly established constitutional and statutory rights and are tantamount to reckless, callous, or deliberate indifference to the rights of Plaintiff.

79. Defendant Maine Department of Corrections' actions showed a malicious, reckless, or callous disregard of or indifference to the rights of Plaintiff.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court grant judgment in favor of Plaintiff and against Defendants and award Plaintiff the following relief:

a) An amount of damages deemed reasonable by the trier of fact sufficient to compensate Plaintiff;

b) Punitive damages in an amount sufficient to punish and deter Defendants from engaging in this form of malicious conduct in the future;

c) An award of pre-judgment interest from the earliest date allowable by law at the

highest rate allowable by law;

    d)     Costs and attorneys' fees to the extent allowable by law. 42 U.S.C. § 1988; and

    e)     Any other relief as the Court deems proper and just.

## COUNT III:
### Violation of Maine Civil Rights Act 5 M.R.S.A §4682

80.     Plaintiff repeats and realleges all foregoing paragraphs as though reproduced here in full.

81.     Defendants intentionally attempted to interfere with the exercise and enjoyment of Plaintiff's rights secured by the United States and Maine Constitutions and the laws of the United States and the State of Maine.

82.     The aforementioned acts of Defendants caused Plaintiff harm.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court grant judgment in favor of Plaintiff and against Defendants and award Plaintiff the following relief:

    f)     An amount of damages deemed reasonable by the trier of fact sufficient to compensate Plaintiff;

    g)     Punitive damages in an amount sufficient to punish and deter Defendants from engaging in this form of malicious conduct in the future;

    h)     An award of pre-judgment interest from the earliest date allowable by law at the highest rate allowable by law;

    i)     Costs and attorneys' fees to the extent allowable by law. 42 U.S.C. § 1988; and

    j)     Any other relief as the Court deems proper and just.

### Prayer

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court grant relief in

Plaintiff's favor on each count of Plaintiff's complaint as set forth above and also grant the following relief:

    a)    Declaratory relief that Defendants violated Plaintiff's state and federal constitutional rights, as well as Plaintiff's rights under the Maine Civil Rights Act;

    b)    Injunctive relief requiring Defendants to: (1) provide effective civil rights training for all Maine Department of Corrections employees and supervisors on the requirements of all applicable laws concerning the rights of pregnant inmates, including 30-A M.R.S. § 1582 which prohibits officers from remaining in the room with a pregnant inmate during labor and childbirth unless their presence is requested by medical personnel; (2) inform female prisoners of their rights during labor and childbirth under Maine law and the Maine and United States Constitutions, whether through information in the "Female MDOC Handbook" provided to inmates, or some other form; and (3) undertake the above-listed actions within 60 days of entry of judgment in this matter.

**DATED:**    February 12, 2025        /s/ Jeremy W. Dean

        Jeremy W. Dean
        Attorney at Law
        Maine Bar No. 5964
        P.O. Box 4391
        Portland, Maine 04101
        207-805-2088
        jwdean@jwdlegal.com